1  Greg Adler, SBN 234142
2  Greg Adler P.C.
3  39899 Balentine Drive, Suite 200
   Newark, CA 94560
4  Phone: (844) 504-6587
5  Fax: (469) 807-8878
   Email: greg@adler.law
6
7  Attorney for Plaintiff Jonathan Correll and the Proposed Classes
8
9
10              **UNITED STATES DISTRICT COURT**
11             **SOUTHERN DISTRICT OF CALIFORNIA**
12
13
14  JONATHAN CORRELL, on behalf of          Case No. 3:21-cv-01833-BTM-MDD
    himself and all others similarly situated,
15                                           **PLAINTIFF'S OPPOSITION TO**
16                  Plaintiff,               **DEFENDANT'S MOTION TO**
    v.                                       **DISMISS COMPLAINT**
17                                           **PURSUANT TO FEDERAL RULES**
18  AMAZON.COM, INC., and DOES 1-10,         **OF CIVIL PROCEDURE 12(b)(1)**
                                             **and 12(b)(6).**
19                  Defendant.
20                                           Hearing Date:  June 3, 2022
21                                           Time:  11:00 a.m.
22                                           Judge:  Hon. Barry Ted Moskowitz
                                             Courtroom: 15B
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY OF OPPOSITION…………………………...1

II. LEGAL STANDARDS…………………………………………………………….5

   A. Legal Standard For A FRCP 12(b)(1) Motion To Dismiss……………………5
   B. Legal Standard For A FRCP 12(b)(6) Motion To Dismiss……………………6

III. FACTUAL SUMMARY……………………………………………………………6

IV.  ARGUMENT………………………………………………………………………7

   A. PLAINTIFF HAS STANDING UNDER ARTICLE III OF THE U.S.
      CONSTITUTION BECAUSE PLAINTIFF HAS INDEED SUFFERED
      AN INJURY IN FACT, CONSISTENT WITH THE NINTH CIRCUIT'S
      ON-POINT RULING IN *WHITE I* ABOUT A SIMILARLY-SITUATED
      PLAINTIFF ALLEGING AN UNRUH ACT CLAIM AGAINST AN
      ONLINE BUSINESS AFTER VISITING THE WEBSITE AND
      ENCOUNTERING DISCRIMINATORY TERMS OR CONDITIONS,
      THEN LEAVING THE WEBSITE WITHOUT SUBSCRIBING TO
      THE BUSINESS'S SERVICES……………………………………………………7

   B. PLAINTIFF HAS STANDING TO SUE UNDER CALIFORNIA'S
      UNRUH CIVIL RIGHTS ACT AND CIVIL CODE SECTION 51.5
      PURSUANT TO THE CALIFORNIA SUPREME COURT'S ON-POINT
      RULING IN *WHITE II*, BECAUSE THE COMPLAINT ALLEGES
      PLAINTIFF VISITED AMAZON'S WEBSITE WITH THE INTENT
      TO USE AMAZON'S SERVICES AND ENCOUNTERED TERMS OR
      CONDITIONS THAT EXCLUDED PLAINTIFF FROM FULL AND
      EQUAL ACCESS TO AMAZON'S SERVICES…………………………...10

   C. PLAINTIFF STATED A CLAIM UNDER THE UNRUH ACT AND
      CIVIL CODE SECTION 51.5 BECAUSE:

      (1) MR. CORRELL HAS ALLEGED FACTS THAT AMAZON'S
         DISCRIMINATORY SERVICES ARE ARBITRARY,
         UNREASONABLE, AND INVIDIOUS…………………………...………12

i

  (2) THERE ARE NO STATE OR FEDERAL STATUTORY OR
    LEGISLATIVE ENACTMENTS EVIDENCING A STRONG
    PUBLIC POLICY IN FAVOR OF A BUSINESS
    CATEGORICALLY DENYING ITS SERVICES TO AN
    INDIVIDUAL OR ANOTHER BUSINESS BASED ON THE
    INDIVIDUAL OR OTHER BUSINESS'S OWNER'S RACE,
    SEX, OR SEXUAL ORIENTATION……………………………………14

  (3) THERE ARE MANY STATUTORY AND LEGISLATIVE
    ENACTMENTS EVIDENCING A STRONG PUBLIC POLICY
    AGAINST DISCRIMINATING BASED ON RACE, SEX, AND
    SEXUAL ORIENTATION, AS WELL A WEALTH OF FEDERAL
    AND CALIFORNIA CASE LAW REINFORCING THE
    COMPELLING PUBLIC POLICIES EMBODIED IN
    ANTIDISCRIMINATION LAWS……………………………………18

  (4) THERE IS NO EVIDENCE IN THE COMPLAINT, OR ANY THAT
    HAS BEEN JUDICIALLY NOTICED, THAT AMAZON'S RACE,
    SEX, AND SEXUAL ORIENTATION-BASED SERVICES
    "FOSTER" DIVERSITY; ON THE CONTRARY, THESE
    EXCLUSIVE SERVICES ACTUALLY DISCOURAGE AND
    HINDER DIVERSITY BY DISCRIMINATING AGAINST MANY
    OF THE GROUPS AMAZON OSTENSIBLY FAVORS………………24

V. CONCLUSION……………………………………………………...25

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Adarand Constructors, Inc. v. Pena*
    515 U.S. 200 (1995) …………………………………………………19

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) …...………………………………………………6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) …………………………………………...…..6

*Brown v. Board of Education*
    347 U.S. 483 (1954) …………………………………………………8

*Burks v. Poppy Const. Co.*
    57 Cal. 2d 463 (1962) ………………………………………………20

*Candelore v. Tinder, Inc.*
    19 Cal. App. 5th 1138 (2019) ……………………………..13, 15, 16, 21

*Cantrell v. City of Long Beach*
    241 F.3d 674 (9th Cir. 2001) …………………………………………...9

*City of Richmond v. J.A. Croson Co.*
    488 U.S. 469 (1989) ………………………………………………....21

*Crest et al v. Padilla*
    Los Angeles Sup. Ct. Case No. 20 STCV 37513 (April 1, 2022) ……........2, 21

*Connerly v. State Personnel Board*
    92 Cal. App. 4th 16 (2001) …………………………………………..2, 19, 22

*E.E.O.C. v. Miss. College*
    626 F.2d 477 (5th Cir. 1980) ………………………………………………20

*Gatto v. County of Sonoma*
    98 Cal. App. 4th 744 (2002) ……...…………………………………………1

iii

*Heckler v. Mathews*
    465 U.S. 728 (1984) ……………………………………………………..9, 14

*Hi-Voltage Wire Works, Inc. v. City of San Jose*
    24 Cal. 4th 537 (2000) …………………………………………….19, 20

*In re Cox*
    3 Cal. 3d 205 (1970) ……………………………………….……………13

*Javorsky v. Western Athletic Clubs, Inc.*
    195 Cal. App. 4th 1386 (2015) …………………………..………..13, 14

*Koire v. Metro Car Wash*
    40 Cal. 3d 24 (1985) …………………………………………….2, 16, 21

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ……………………………………………………8

*Marina Point Ltd. v. Wolfson*
    30 Cal. 3d 721 (1982) …………………………………..…………16, 21

*Mendiondo v. Centinela Hosp. Med. Ctr.*
    521 F.3d 1097 (9th Cir. 2008) …………………………………………… 6

*People v. Williams*
    75 Cal. App. 5th 584 (2022) ………………………………………………8

*Pines v. Tomson*
    160 Cal. App. 3d 370 (1984) ……………………………………...20, 21

*Shaw v. Hunt*
    517 U.S. 899 (1996) ……………………………………………………..21

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ………………………………………………………8

*White v. Square, Inc.*
    891 F.3d 1174 (9th Cir. 2018) ("*White I*") …………………….............3, 8, 9

iv

*White v. Square, Inc.*
    7 Cal.5th 1019 (2019) ("*White II*") …………...………………………2, 3, 10, 11

*Winchell v. English*
    62 Cal. App. 3d 125 (1976) …………………………………………………. .20

# STATUTES

42 USC § 1981 ………………………………………………………………….23

42 USC § 2000a ………………………………………………………………...23

42 USC sec. 2000e-2(a) ………………………………………………………...23

42 USC § 2000a-1 ………………………………………………………………24

42 USC § 2000d………………………………………………………………….24

31 USC § 6711…………………………………………………………………..24

49 USC § 306……………………………………………………………………24

Cal. Bus. & Prof. Code § 125.6 ………………………………………………...23

Cal. Civ. Code § 51………………………..……………………………………*passim*

Cal. Civ. Code § 51.5………….…..……………………………………………*passim*

Cal. Civ. Code § 51.6………….………………………………...……………….24

Cal. Code Regs. Tit. 2, § 11105………………………………………………….24

California Constitution Art. 1, § 8 ……………………………………………...22

California Constitution Art. 1, § 31(a) …………………………………………22

Cal. Educ. Code § 220 …………………………………………………………22

Cal. Educ. Code § 71028 ………………………………………………………17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Cal. Code Regs. Tit. 2, § 11006 …………………………………………………...22

Cal. Code Regs. Tit. 5, § 4900 …………………………………………………….23

Cal. Gov't Code § 12920………………………………………………………....24

Cal. Gov't Code § 12921………………………………………………………....24

Cal. Gov't Code § 11135 ………………………………………………………….23

Cal. Gov't Code § 11139.8………………………………………………………..24

Cal. Gov't Code § 12940………………………………………………………….24

Cal. Gov't Code § 12955………………………………………………………….24

Cal. Health & Safety Code § 33436(b)(1)……………………………………….24

Cal. Ins. Code § 10140 …………………………………………………………..23

Cal. Public Contract Code § 2010 ……………………………………………...23

Cal. Public Contract Code § 10295.35…………………………………………..24

Cal. Pub. Res. Code § 5080.34…………………………………………………..24

Cal. Pub. Res. Code § 25230(b)(2) ……………………………………………...17

Cal. Public Resources Code § 30013 …………………………………………...23

Cal. Water Code App. § 133-419 ……………………………………………….18

City of San Diego Art. 2: Administrative Code, Div. 35 § 22.3501 …………...24

Fed. R. Civ. P. §8(a)………………………………………………………………..6

Fed. R. Civ. P. §201(b) ………………………………………………………….15

U.S. Constitution 14th Amendment ……………………………………………..22

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# OTHER AUTHORITIES

The State Bar of California Rule of Professional Conduct 3.3(a)(2)
     Candor Toward The Tribunal……………………………………………...8

American Bar Association Model Rule 3.3(a)(2)
     Candor Toward The Tribunal……………………………………….……..8

vii

# I.  INTRODUCTION AND SUMMARY OF OPPOSITION

Amazon mischaracterizes this case as only affecting heterosexual White males. In fact, several of the subclasses consist of members of other racial, gender, and sexual orientation groups that were adversely affected by Amazon's discriminatory programs, including but not limited to Hispanic, Asian, non-binary, and transgender individuals who were denied full and equal accommodations, advantages, facilities, privileges, and/or services by Amazon.  **It is imperative that members of those groups are not forgotten here.**

There is no public policy in favor of Amazon – under the false pretense of "diversity" – denying certain services to the public on the basis of race, sex, and sexual orientation. Nor is Amazon exempted or excused from Civil Code §§51 and 51.5's prohibitions against businesses providing unequal treatment of and discrimination against people and other businesses based on several protected personal characteristics. As a result, Amazon's arbitrary, invidious, and unreasonable discrimination violates the California Unruh Civil Rights Act (codified as California Civil Code section 51) and Civil Code section 51.5.[1]

There is a compelling public policy in California and the rest of the United States, evidenced by a slew of statutory or legislative enactments and established case law, in favor of requiring businesses to treat people equally except in extremely rare circumstances, none of which are present in this case. *Koire v. Metro Car Wash*, 40

---

[1] Amazon inaccurately combines California Civil Code sections 51 and 51.5 and refers to them together as the "Unruh Civil Rights Act" or simply the "Unruh Act." But only Civil Code §51 is the Unruh Civil Rights Act.  Civil Code §§51 and 51.5 were separately enacted in 1959 and 1976, respectively, for two very different reasons and with very different legislative histories.  See *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 757 (2002), which discusses this inaccuracy at length, ruling: "By its own terms, the Unruh Civil Rights Act comprises only section 51."  Thus, Amazon's motion failed to move to dismiss the Complaint's Civil Code §51.5 cause of action.

Cal. 3d 24, 40 fn 8 (1985) ("'Public policy' exceptions to the Unruh Act are rare" because of "the government's 'compelling interest in eradicating discrimination in all forms.'")  In fact, as explained below, both California and Federal courts routinely reject purported public policy exceptions to antidiscrimination laws.  "[A]n exceedingly persuasive justification for unequal treatment based upon gender would have to be derived from public policy, and the decision in *Koire v. Metro Car Wash* forecloses the possibility of a state public policy supporting unequal treatment of men and women." *Connerly v. State Personnel Board*, 92 Cal. App. 4th 16, 40, fn 3 (2001).  "[T]he California Constitution protects the rights of *individuals* to equal treatment."  *Crest et al v. Padilla*, Los Angeles Sup. Ct. case no. 20 STCV 37513 (original italics) (April 1, 2022) (See Request for Judicial Notice, Exhibits 1 and 2; declaring Cal. Corp. Code § 301.4 unconstitutional as violating Article 1, Section 7 of the California Constitution (Equal Protection) by requiring race, gender, and LGBT diversity on corporate boards.) Simply put, alleged promotion or fostering of diversity does not defeat or exceed the State's compelling interest in strict enforcement of its antidiscrimination laws.[2]

At this nascent, pleadings stage of this case, Plaintiff does not have to prove Amazon discriminated against him and the putative class members in violation of Civil Code §§51 or 51.5.  Now, Plaintiff must only adequately state a claim for which relief can be granted.  The Complaint has done that, with the allegations in the Civil Code

---

[2] As set forth in the California Supreme Court's latest Unruh Act opinion, *White v. Square, Inc.*, 7 Cal.5th 1019, 1025 (2019), the purpose of the Act is to create and preserve "a nondiscrimination environment in California business establishments by 'banishing' or 'eradicating' arbitrary, invidious discrimination by such establishments." (Citations omitted.) "The Act stands as a bulwark protecting each person's inherent right to 'full and equal' access to 'all business establishments.' (Citations omitted.) In enforcing the Act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. (Citation omitted.) We have consistently held that "the Act must be construed liberally in order to carry out its purpose." (Citations omitted.)

§§51 and 51.5 causes of action matching the elements of CACI jury instructions 3060 and 3061, respectively, for these two claims.

Regarding Amazon's argument that Plaintiff lacks standing under Article III of the U.S. Constitution, Amazon shockingly (and perhaps unethically according to the State Bar of California and ABA rules for Candor Towards the Tribunal) failed to disclose to the Court the leading Ninth Circuit legal authority on Article III's requirement that a plaintiff must have suffered an injury in fact to have standing, *White v. Square, Inc.* 891 F.3d 1174 (9th Cir. 2018) ("*White I*"), **which is directly on point in the present case and directly adverse to Amazon's position on this issue.** *White I* held that a person who visits and reviews a business's website, encounters a discriminatory policy, and does not proceed to subscribe to the website's services, has standing under Article III of the U.S. Constitution.

Turning to the requirement for standing for an Unruh Act or Civil Code section 51.5 claim, Amazon once again failed to disclose to the Court the leading legal authority for standing for an Unruh Act plaintiff who visits a business's website with the intent to use its services, encounters terms and conditions that allegedly deny the plaintiff full and equal access to its services, and then leaves the website without entering into an agreement with the service provider, which is the California Supreme Court case of *White v. Square, Inc.* 7 Cal. 5th 1019 (2019) ("*White II*"). *White I* first made the above ruling on Article III standing for a plaintiff who encountered discrimination while visiting a website, then certified questions to the California Supreme Court about the standing requirement under the Unruh Act under the same circumstances.

*White II* answered the Ninth Circuit's questions with the following concise holding:

> We conclude that a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business. *White II* at 1032 – 1033.

3

*White II*, like *White I*, could not have been more on point with the facts of the present case. Accordingly, the Complaint's allegation about Plaintiff's visits to Amazon's website where he encountered terms and conditions about Amazon's race, sex, and sexual orientation-based services mirrors *White II*'s holding regarding standing for a plaintiff who encountered discrimination while visiting a website as follows:

> In the summer and fall of 2021, Plaintiff, who is a heterosexual White male, visited Defendant's Amazon.com website with the intent to become an Amazon Business seller, and encountered the above-referenced webpages and programs, including Amazon's Seller Certification program and Guided Buying policy terms or conditions, all of which denied him and other heterosexual White males from the full and equal access to Amazon's services based on LGBT status, race, and sex. (Complaint, ¶37.)

Lastly, there is no "evidence" in the Complaint, or any that has been judicially noticed, proving Amazon's race, sex, and sexual orientation-based services actually "fostered" or "promoted" diversity as Amazon asserts in its motion. As was set forth in the Complaint and will be further explained below, these discriminatory services actually discourage and hinder diversity by excluding much of the population from receiving the services at issue in this case.

For example, the Black Business Accelerator offers valuable services including financial assistance, advertising credits, free imaging services, cash grant opportunities, and educational and marketing support to only Blacks. Therefore, Amazon bars 88% of the population – every Hispanic, Asian, Native American, Pacific Islander, and Caucasian of *all genders* – from receiving those services. (Complaint at ¶ 10.) This means Amazon will not provide those services to a Hispanic non-binary immigrant, a poor struggling Asian woman, a disabled Native American man, or a transgender Pacific Islander, regardless of how disadvantaged they are or how much these minorities would benefit from a Business Accelerator program just as much as would a Black person. Furthermore, there is no "Asian Heritage Month" or "Native American

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Heritage Month" promotion for Asian and Native American sellers like there is for Hispanics and Blacks. (Complaint at ¶ 11.) Amazon even has a "Discover Women-Owned Businesses" service to highlight and promote women-owned businesses, but no "Discover Nonbinary-Owned [or Transgender-Owned] Businesses" page, even though members of the latter groups would benefit from such promotion too. (Complaint at ¶ 6.) Amazon's "Discover Women-Owned Businesses" service or feature has no equivalent for Black, Hispanic, Asian, Pacific Islander, and Native American men, all of whom would benefit from having their Amazon seller pages promoted as well.

Amazon's exclusive race, sex, and sexual orientation-based exclusionary practices for its sellers' accounts is akin to Amazon allowing everyone full and equal access to Amazon buyer accounts to shop on Amazon.com, but then denying members of certain racial, gender, or sexual orientation groups the ability to sign up for Amazon Prime, and then saying the denial of certain services to certain groups was done to promote diversity.  Slapping a "diversity" label on a discriminatory business practice does not legalize the discrimination, especially a practice that discriminates against or excludes much of the population.

## II.    LEGAL STANDARDS

### A. Legal Standard For A FRCP 12(b)(1) Motion To Dismiss

Plaintiffs agree with Amazon's legal standard that for a plaintiff to prevail on a defendant's 12(b)(1) motion to dismiss, a plaintiff must establish standing to invoke subject matter jurisdiction, i.e., (1) the plaintiff must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant and not the result of the independent action of some third party not before the court, and (3) that is likely to be redressed by a favorable judicial decision. Amazon's motion concentrates on only the first element – whether the Plaintiff in the present case suffered an injury in fact. However, Mr. Correll clearly meets the standing requirements set forth by the Ninth Circuit in *White I*.

### B. Legal Standard For A FRCP 12(b)(6) Motion To Dismiss

5

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. §8(a). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III.   FACTUAL SUMMARY

The crux of this case is Amazon's implementation of several policies, programs, and services that favor certain groups of Amazon's sellers over others based on their race, sex, and LGBT status or sexual orientation.  Complaint, *passim*.  These programs showcase, promote, financially assist, mentor, market, and otherwise support certain sellers' products to the detriment of other sellers, solely based on the sellers' otherwise protected personal characteristics.  Complaint, ¶¶ 5-18.

Several of these discriminatory programs or services entice, steer, and direct consumers away from Amazon's disfavored sellers (the most disfavored of whom suffer from the intersectionality of being White, heterosexual, and male) and towards Amazon's favored sellers who can be (and in some cases are) wildly wealthy women, Blacks, Hispanics, Asians, Native Americans, Pacific Islanders, and members of the LGBT community.  *Id.*, 2:24 – 3:2, ¶19, *passim*.  As set forth in paragraph 19 of the Complaint, billionaires who happen to have Amazon's preferred skin color, or are female or LGBT, are eligible for these programs, but a poor or middle-class heterosexual White guy is not.  *Id.*, ¶19.

The programs and services challenged in this case are not based on sellers' financial situation, economic plight, competitive disadvantage, business savvy, or any

other metric equally applicable to all persons, but are based solely on race, sex, and sexual orientation. The Complaint includes the following example:

> S&F Corporation, the seller of the items in Exhibit 11, <u>is an Asian-owned business with annual revenues of $23 million dollars</u>. Therefore, a buyer who checks the box for "Minority-Owned Business" in their user interface and searches for these outdoor light timers will receive search results from Amazon containing products sold by this $23 million seller solely because Amazon has determined this well-heeled seller is a minority, but Amazon will not provide that same buyer any search results containing the exact same products if the seller has the misfortune of being White.  Complaint, ¶18.

These types of business practices brazenly cross the line from purported fostering or promoting diversity, to outright intentional, arbitrary, invidious, and unreasonable discrimination against almost everyone.

## IV.   ARGUMENT

**A. PLAINTIFF HAS STANDING UNDER ARTICLE III OF THE U.S. CONSTITUTION BECAUSE PLAINTIFF HAS INDEED SUFFERED AN INJURY IN FACT, CONSISTENT WITH THE NINTH CIRCUIT'S ON-POINT RULING IN *WHITE I* ABOUT A SIMILARLY-SITUATED PLAINTIFF ALLEGING AN UNRUH ACT CLAIM AGAINST AN ONLINE BUSINESS AFTER VISITING THE WEBSITE AND ENCOUNTERING DISCRIMINATORY TERMS OR CONDITIONS, THEN LEAVING THE WEBSITE WITHOUT SUBSCRIBING TO THE BUSINESS'S SERVICES.**

Amazon's motion failed to disclose to this Court two recent controlling legal authorities – the two "*White v. Square*" opinions noted above – the first by the Ninth Circuit Court of Appeals in 2018, and the second by the California Supreme Court in

///

///

///

2019.  The latter case responded to a Ninth Circuit order in the first case certifying a question to California's high court[3].

The Ninth Circuit opinion, *White v. Square, Inc.,* 891 F.3d 1174 (9th Cir. 2018) ("*White I*") held that a person who merely visited and reviewed a business's website, came upon a discriminatory policy, and did not proceed to engage the website's services, had standing under Article III of the U.S. Constitution because he had established an injury in fact as defined in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *White I*, 891 F.3d at 1176.

*White I* was about a bankruptcy attorney who brought an Unruh Act claim against online business, Square, Inc., a provider of an attachment to electronic devices to

---

[3] That Amazon would omit from its motion any mention of *the* landmark California Supreme Court opinion directly addressing standing under the Unruh Act is telling of Amazon's apparent intent to mislead or, at best, not fully inform this Court.  Omitting the *White* cases from a discussion of standing under the Unruh Act is akin to omitting *Brown v. Board of Education*, 347 U.S. 483 (1954) from the discussion of a case about segregation. Plaintiff maintains it strains credulity that six attorneys from one of the world's largest law firms somehow inadvertently, innocently, or unwittingly omitted citations to both *White* opinions. The State Bar of California Rule 3.3(a)(2), Candor Toward the Tribunal, provides in pertinent part: "A lawyer shall not . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel…" Similarly, ABA Model Rule 3.3(a)(2) under Candor Toward the Tribunal, reads, "A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." See, e.g., *People v. Williams,* 75 Cal. App. 5th 584 (2022) (defendant's attorney was not excused from duty of candor to tribunal, with respect to disclosing adverse legal authority as required by California Rule of Professional Conduct 3.3(a)(2).)

process credit card payments. Square's policy prohibited bankruptcy attorneys from using Square's online payment processing service. *White I*, 891 F.3d at 1176. The attorney did not enter a business relationship with Square.  *Ibid.*

*White I* held that the attorney's allegations satisfied Article III's requirements for a concrete and particularized injury because he alleged that he sought to use Square's services but was denied full and equal access because of its discriminatory policy against bankruptcy attorneys. *White I*, 891 F.3d at 1176-77.  *White I* further explained that the Plaintiff alleged a concrete and particularized injury "[b]ecause 'discrimination itself ... can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group,'" *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984), and "state law can create interests that support standing in federal courts." *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001); *White I*, 891 F.3d at 1177.

Plaintiff's next argument, concerning Plaintiff's standing under California's Unruh Act, is supported by *Cantrell's* finding that "state law can create interests that support standing in federal courts." *Ibid*. Here, the Complaint alleges sufficient facts to meet the standing requirement for victims of an online business's discriminatory policy, terms, or conditions, at least by the following allegation:

> In the summer and fall of 2021, Plaintiff, who is a heterosexual White male, visited Defendant's Amazon.com website with the intent to become an Amazon Business seller, and encountered the above-referenced webpages and programs, including Amazon's Seller Certification program and Guided Buying policy terms or conditions, all of which denied him and other heterosexual White males from the full and equal access to Amazon's services based on LGBT status, race, and sex.  (Complaint, ¶37.)

Also, the Complaint's paragraphs 38 through 43, 52, 58, 61, 64, 70 through 73, and 78 through 80, all allege facts that Plaintiff has suffered an injury in fact as defined by *White I* and *Spokeo v. Robins*.  Plaintiff now moves on to the second *White v. Square*

9

opinion, this one by the California Supreme Court, *White v. Square, Inc.,* 7 Cal. 5th 1019 (2019) ("*White II*"), which established the requirement for standing for a person alleging an Unruh Act discrimination claim against an online business.

### B. PLAINTIFF HAS STANDING TO SUE UNDER CALIFORNIA'S UNRUH CIVIL RIGHTS ACT AND CIVIL CODE SECTION 51.5 PURSUANT TO THE CALIFORNIA SUPREME COURT'S ON-POINT RULING IN *WHITE II*, BECAUSE THE COMPLAINT ALLEGES PLAINTIFF VISITED AMAZON'S WEBSITE WITH THE INTENT TO USE AMAZON'S SERVICES AND ENCOUNTERED TERMS OR CONDITIONS THAT EXCLUDED PLAINTIFF FROM FULL AND EQUAL ACCESS TO AMAZON'S SERVICES.

The controlling legal authority for standing under the Unruh Act for a plaintiff who brings a claim against an online business based on terms and conditions the plaintiff encounters during a visit to the business's website and does not subscribe to the business's services is *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019) ("*White II*"). *White II* was published the year after *White I* determined the website-visiting bankruptcy attorney, Mr. White, had Article III standing because he suffered an injury in fact. The Ninth Circuit certified questions to the California Supreme Court; specifically, whether White had standing under California's Unruh Act. *White II* at 1023; *White I* at 1175. *White II* presented the following question:

> Does a plaintiff have standing to bring a claim under the Unruh Civil Rights Act when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that allegedly deny the plaintiff full and equal access to its services, and then leaves the website without entering into an agreement with the service provider?  *White II* at 1023.

The California Supreme Court unanimously responded in the positive in succinct, bookend fashion, beginning its opinion with this:

10

The answer is yes. When a plaintiff has visited a business's website with intent to use its services and alleges that the business's terms and conditions exclude him or her from full and equal access to its services, the plaintiff need not enter into an agreement with the business to establish standing under the Unruh Civil Rights Act. In general, a person suffers discrimination under the Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services. We conclude that this rule applies to online businesses and that visiting a website with intent to use its services is, for purposes of standing, equivalent to presenting oneself for services at a brick-and-mortar store. Although mere awareness of a business's discriminatory policy or practice is not enough for standing under the Act, entering into an agreement with the business is not required. *White II* at 1023.

And concluding its opinion with this concise ruling:

We conclude that a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business. *White II* at 1032-1033.

As provided above, the Complaint (e.g. ¶37) closely mirrors the California Supreme Court's above ruling, standard, or requirement for standing, for a website-visiting plaintiff to bring an Unruh Act discrimination case regarding terms or conditions he encounters on a website, and then does not subscribe to that business's services. The Complaint includes many additional factual allegations about how the Amazon.com website excluded Plaintiff and the putative class members from full and equal access to Amazon's services, including, but not limited to all of the paragraphs preceding above paragraph 37, and then continuing from paragraphs 38 through 43, 52, 58, 61, 64, 70 through 73, and 78 through 80, i.e., throughout almost the entire Complaint. Therefore, the Complaint alleges sufficient facts to meet the California

Supreme Court's standing requirement for a plaintiff to bring a claim under the Unruh Act when the plaintiff visits a business's website with the intent of using its services, encounters terms and conditions that allegedly deny the plaintiff full and equal access to its services, and then leaves the website without entering into an agreement with the service provider.

## C. PLAINTIFF STATED A CLAIM UNDER THE UNRUH ACT AND CIVIL CODE SECTION 51.5 BECAUSE:

**(1) MR. CORRELL HAS ALLEGED FACTS THAT AMAZON'S DISCRIMINATORY SERVICES ARE ARBITRARY, UNREASONABLE, AND INVIDIOUS;**

**(2) THERE ARE NO STATE OR FEDERAL STATUTORY OR LEGISLATIVE ENACTMENTS EVIDENCING A STRONG PUBLIC POLICY IN FAVOR OF A BUSINESS CATEGORICALLY DENYING ITS SERVICES TO AN INDIVIDUAL OR ANOTHER BUSINESS BASED ON THE INDIVIDUAL OR OTHER BUSINESS'S OWNER'S RACE, SEX, OR SEXUAL ORIENTATION;**

**(3) THERE ARE MANY STATUTORY AND LEGISLATIVE ENACTMENTS EVIDENCING A STRONG PUBLIC POLICY AGAINST DISCRIMINATING BASED ON RACE, SEX, AND SEXUAL ORIENTATION, AS WELL A WEALTH OF FEDERAL AND CALIFORNIA CASE LAW REINFORCING THE COMPELLING PUBLIC POLICIES EMBODIED IN ANTIDISCRIMINATION LAWS; AND**

**(4) THERE IS NO EVIDENCE IN THE COMPLAINT, OR ANY THAT HAS BEEN JUDICIALLY NOTICED, THAT AMAZON'S RACE, SEX, AND SEXUAL ORIENTATION-BASED SERVICES "FOSTER" DIVERSITY; ON THE CONTRARY, THESE EXCLUSIVE SERVICES ACTUALLY DISCOURAGE AND HINDER DIVERSITY BY DISCRIMINATING AGAINST MANY OF THE GROUPS AMAZON OSTENSIBLY FAVORS.**

### 1.   Mr. Correll Has Alleged Facts That Amazon's Discriminatory Services Are Arbitrary, Unreasonable, And Invidious.

To begin, this case is in its nascent pleadings stage as opposed to being teed up for summary judgment or trial. Amazon brought a motion to dismiss for lack of standing

12

1    as addressed above, and for failing to state a claim, i.e., arguing the Complaint lacks

2    sufficient facts to support a cognizable legal theory. Therefore, while Plaintiff is

3    confident that at the appropriate time he will satisfactorily prove, based in part on the

4    evidence gathered through discovery, that Amazon's race, sex, and sexual orientation-

5    based services violated the Unruh Act and Civil Code section 51.5, Plaintiff does not

6    have to make such proof in opposition to a Fed. R. Civ. P. §12(b)(1) or 12(b)(6) motion.

7        Furthermore, Amazon misstates the types of discrimination prohibited by the

8    Unruh Act. In addition to arbitrary and invidious discrimination, the Act also prohibits

9    "unreasonable" discrimination. See, e.g., *In re Cox*, 3 Cal. 3d 205, 216 (1970) ("the Act

10   renders unlawful arbitrary, invidious or unreasonable discrimination"); *Candelore v.*

11   *Tinder, Inc.,* 19 Cal. App. 5th 1138 (2019) (quoting *Cox*); *Javorsky v. Western Athletic*

12   *Clubs, Inc.* 195 Cal. App. 4th 1386, 1395 (2015) ("Thus, the Act renders unlawful only

13   arbitrary, invidious or unreasonable discrimination.")

14       Here, the Complaint is replete with allegations about how Amazon's

15   discriminatory provision of programs and services on the basis of sellers' race, sex, or

16   sexual orientation is arbitrary, unreasonable, and invidious, especially the paragraph

17   that reads, "Amazon's above-referenced LGBT status-based, race-based, and sex-based

18   Seller Certification program and Guided Buying policy has (1) caused discontent,

19   divisiveness, animosity, harm, resentment, and envy among Amazon sellers and

20   prospective Amazon sellers, (2) *constituted intentional, arbitrary, unreasonable,*

21   *and/or invidious discrimination . . ..*" Complaint, ¶40. And the Complaint is full of

22   factual allegations about how several of these programs and services arbitrarily,

23   unreasonably, and invidiously discriminate against not only all White heterosexual

24   males, but also arbitrarily, unreasonably, and invidiously discriminate against Blacks,

25   Hispanics, Asian-Americans, Native Americans, and Pacific Islanders based not on

26   financial or business savvy needs, but instead simply on the basis of race, sex, or sexual

27   orientation. Complaint, *passim.* As noted above, the Complaint references Asian-owned

28   S&F Corporation, with annual revenues of 23 million dollars, and how S&F benefits

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

from Amazon's race-based services that Amazon denies to White people.  This is just one example of how these exclusive services are alleged in the Complaint to be arbitrary, invidious, or unreasonable.

Regarding the "invidious" member of the trio of types of discrimination prohibited by the Unruh Act, *Javorsky*, *supra*, (195 Cal. App. 4th at 1404) defines invidious discrimination as follows: "Invidious discrimination is the treatment of individuals in a manner that is malicious, hostile, or damaging."  Here, the Complaint makes several allegations that these programs or services are at least damaging[4] to Plaintiff and the putative class members, including paragraphs 65 ("The Class members have been damaged . . . ."), 72 ("Amazon's denying Plaintiff and the Class access to and participation in Amazon's Seller Certification program and Guided Buying policy . . . damaged Plaintiff and the Class") and 80 ("Amazon's denying Plaintiff and the Class access to and participation in Amazon's Seller Certification program and Guided Buying policy . . . damaged Plaintiff and the Class.")

Although not included specifically in the Complaint's many allegations about the arbitrariness, invidiousness, and unreasonableness of Amazon's exclusive programs and services, Plaintiff proffers that all three types of discrimination prohibited by the Unruh Act are present in this case. After all, a scenario where the owner of a multimillion dollar business is eligible for Amazon's Seller Certification and Guided Buying services because he is Asian, but a poor White guy is outright ineligible, is arbitrary *and* invidious *and* unreasonable.

**2. There Are No State Or Federal Statutory Or Legislative Enactments Evidencing A Strong Public Policy In Favor Of A Business Categorically Denying Its Services To An Individual Or Another Business Based On The Individual or Other Business's Owner's Race, Sex, Or Sexual Orientation.**

---

[4] "[D]iscrimination itself ... can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group…" *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984).

14

Amazon cites several internet articles[5] and federal and state statutes in support of its argument that "State And Federal Public Policy Strongly Encourages Companies To Promote Diversity." Amazon MPA 3:3-4. But encouraging companies to promote diversity is not the same as the companies then being allowed (much less required) to violate the Unruh Act by categorically excluding individuals or other businesses from receiving that business's full and equal services based on race, sex, or sexual orientation. Contrary to the statutes cited by Amazon, numerous federal and state statutes evidence, embody, or exemplify the strong public policy to **not** discriminate based on race, sex, and sexual orientation, and will be at least partly listed and defined in a further argument below.

The lead case about public policy exceptions to Unruh Act violations is *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138 (2019), another controlling legal authority conspicuously missing from Amazon's motion. *Candelore* is about the popular dating app Tinder's premium service, Tinder Plus, charging subscribers 30 years of age and older twice as much as Tinder charged users under 30 for the same service - $19.99/month vs. $9.99/month. *Candelore* at 1142. Mr. Candelore sued Tinder for violating the Unruh Act proscription against age discrimination by businesses operating in California. *Ibid.* The trial court sustained Tinder's demurrer, but the Court of Appeal reversed, finding instead that "because nothing in the complaint suggests there is a strong public policy that justifies the alleged discriminatory pricing, the trial

---

[5] Presumably, because the twenty internet articles Amazon listed in its Table of Authorities as "OTHER AUTHORITIES" were not requested to be judicially noticed (and Plaintiff disputes whether those articles are judicially noticeable under Fed. R. Civ. P. §201(b)), Amazon artfully bypassed the normal request for judicial notice filing and slipped in these twenty internet articles under the radar and hoped they would be considered in the Court's public policy analysis. But, as explained below, internet articles are not the statutory or legislative enactments courts use to find public policy exceptions to Unruh Act violations.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

court erred in sustaining the demurrer. Accordingly, we swipe left, and reverse." *Candelore* at 1143.

*Candelore* analyzed at length the trial court's erroneous public policy justification and the California Supreme Court Unruh Act opinions of *Koire v. Metro Car Wash,* 40 Cal. 3d 24 (1985) and *Marina Point Ltd. v. Wolfson,* 30 Cal. 3d 721, 742-743 (1982) about how strong public policies can allow a business practice that is otherwise prohibited by the Unruh Act, but those public policies must be evidenced by statutory or legislative enactments. *Candelore, supra,* at 1152-1155. *Candelore* held, "As alleged, Tinder's pricing model against users age 30 and over, and the complaint's allegations do not compel the finding that this discrimination is justified by a strong public policy in favor of such differential treatment." *Id.* at 1154-1155.

There is no strong public policy as evidenced in any statutory or legislative enactments cited by Amazon that favors a business categorically denying its services to another business based on that other business owner's race, sex, or sexual orientation, as what is happening here. It would not have been an Unruh Act violation for Amazon to promote, tout, highlight, subsidize, finance, or mentor businesses in a manner that was neutral to race, sex, or sexual orientation[6]. Where Amazon went astray of the Unruh

---

[6] The following passage from *Koire* is instructive: "[The defendant] has offered no reason why it could not charge a lower admission fee one night each week to men and women alike. This would encourage increased patronage by both sexes on equal terms. When faced with a similar question, the New York Human Rights Commission observed that '[p]erhaps, in their unending quest to serve best the social interests of the public, a Community Day at reduced prices irrespective of sex, rather than a Ladies Day with its attendant pricing based on sex, **might well accomplish respondents' social concerns without violating the public policy of this State** ....' [citations, emphasis added.] Such a solution might work equally well here." *Koire* at 39. Amazon has offered no reason why, for example, it could not increase seller diversity by having a Business Accelerator program that was fully and equally available to everyone and did not exclude *all* non-Blacks. Amazon simply took the currently much-maligned "woke" way out and hoped no one would complain that thousands of Californians – including

---

16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Act's proscription against this type of discrimination is when Amazon elected to exclude members of certain groups from receiving certain services solely on the basis of personal characteristics specifically protected by the Act.

None of the approximately sixty statutes cited in Amazon's motion evidence a strong public policy in favor of any business denying full and equal services to any individual or other business based on the individual or other business owner's race, sex, or sexual orientation. Plaintiff has insufficient pages available here to analyze each of the statutes cited by Amazon but will briefly address the three California statutes in footnote 8 on page 15 of Amazon's MPA.

Cal. Educ. Code § 71028 evidences a public policy in favor California Community Colleges establishing "participation *goals*," not a policy in favor of denying certain educational services to people based on their race, sex, or sexual orientation. Establishing *goals* to increase diversity would not be the same as colleges, hypothetically, excluding members of certain races from certain classes in the name of diversity (e.g. classes that only members of one race are allowed to attend), or giving discounted tuition to members of certain races to encourage them to sign up for classes and claim the discount is necessary to promote diversity (e.g. people of color get 25% off their tuition but Whites pay full price, or heterosexuals get 20% off for an LGBT Studies class while LGBT students pay full price.) Obviously, such business practices would cross the line between fostering diversity and unlawful discrimination, but that is exactly what Amazon did when it offered certain "accommodations, advantages, facilities, privileges, or services" (Cal. Civ. Code § 51(b)) to some groups but not others.

Similarly, Cal. Pub. Res. Code § 25230(b)(2) does not evidence a strong public policy in favor of the State Energy Resources Conservation and Development Commission categorically denying contracts, loans, or grants to "contractors, loan

---

countless non-Black minorities – were denied equal opportunity to participate in what turned out to be Amazon's exclusive, anything-but diverse, programs and services.

recipients, and grant recipients" based on their race, sex, or sexual orientation. While it directs the Commission to track the diversity of contractors, it does not evidence a strong public policy in favor of the Commission discriminating against any group bearing certain protected personal characteristics. Again, promoting diversity is not the same as unequal provision of services, programs, or promotions.

Lastly, Cal. Water Code App. § 133-419 does not evidence a strong public policy in favor of the San Diego Area Wastewater Management District to categorically deny contracts to business enterprises based on the business owners' race, sex, or sexual orientation. While this statute establishes "goals" for participation of minority and women business enterprises, it does not deny contracts to businesses based on the business owners' race, sex, and sexual orientation, i.e., this statute leaves all contracts open to bidding by all businesses regardless of the owners' race, sex, or sexual orientation[7].

### 3. There Are Many Statutory And Legislative Enactments Evidencing A Strong Public Policy Against Discriminating Based On Race, Sex, And Sexual Orientation, As Well As A Wealth Of Federal And California Case Law Reinforcing The Compelling Public Policies Embodied In Antidiscrimination Laws.

Amazon argues that treating people unequally based on personal characteristics specified in the Unruh Act does not violate the Act so long as Amazon can cite some public policy that it alleges supports its position – in this case, fostering diversity. But it is noteworthy that Amazon does not cite a single case – not even *one* – where a court has held what Amazon is urging this Court to hold: that race-based discrimination in

---

[7] Most of the statutes cited by Amazon deal with diversity outreach by government agencies, not private businesses. The Unruh Act only applies to "business establishments." Cal. Civ. Code § 51(b). Therefore, the statutes cited by Amazon are largely inapposite because they evidence policy goals for government subdivisions, not business establishments.

public accommodations was lawful under the Unruh Act[8] because of a public policy that was *more compelling* than the state's compelling interest and strong public policy in eradicating race discrimination. Amazon could not cite even **one** case, and for one simple reason: race discrimination in public accommodations is socially harmful, not beneficial[9]. The same applies to sex discrimination, except in extremely rare circumstances (*Koire* "forecloses the possibility of a state public policy supporting unequal treatment of men and women," *Connerly, supra,* at 40, but "some sex-segregated facilities, such as public restrooms, may be justified by the constitutional right to personal privacy." *Koire* at 38.) Thus, Amazon's purported desire to foster diversity by offering valuable accommodations, advantages, privileges, or services based on race, gender, and LGBT status does not rise to the level of an "exceedingly persuasive justification" or a compelling *constitutional* exception to the Unruh Act.

In reality, California courts uniformly reject unequal treatment based on race or gender as violative of public policy[10]. "[T]he plain language of the Unruh Act and the

---

[8] Amazon created a program for which Black millionaires are eligible, but financially disadvantaged Hispanics, Asians, Native Americans, and Whites are not. If that is not arbitrary, invidious, *and* unreasonable discrimination, then nothing is.

[9] Even in rare cases where such practices have been upheld, they were generally limited to instances where the government provided compelling evidence of historical discrimination perpetrated by the very government agency seeking to remedy its own past discrimination, not broad societal issues generally. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 239 (1995) (Scalia, J. concurring, "In my view, government can never have a 'compelling interest' in discriminating on the basis of race in order to 'make up' for past racial discrimination in the opposite direction… there can be no such thing as either a creditor or a debtor race. To pursue the concept of racial entitlement – even for the most admirable and benign of purposes – is to reinforce and preserve for future mischief the way of thinking that produced race slavery, race privilege and race hatred." Amazon has not shown – nor even argued – that such exclusive race, sex, and sexual orientation programs are necessary and narrowly tailored to remedy past discrimination perpetrated *by Amazon* against its sellers on Amazon.com.

[10] In *Hi-Voltage Wire Works, Inc. v. City of San Jose,* 24 Cal. 4th 537 (2000), the California Supreme Court construed Proposition 209 – a constitutional amendment that

19

uniform legislative purpose behind California's anti-discrimination laws, including the Unruh Act and its amendments, reflect the state's 'compelling interest in eradicating discrimination in all forms.'"   *Pines v. Tomson,* 160 Cal. App. 3d 370, 391 (1984) (quoting *E.E.O.C. v. Miss. College,* 626 F.2d 477, 488 (5th Cir. 1980), cert. den. 453 U.S. 912 (1981).)  The Act implements "not only the Fourteenth Amendment's promise of equality, but also the greater guarantee of the California Constitution's equal protection clause, Article I section 7(a), and the guarantee of ***equality in the . . . marketplace***, provided by Article I section 8." *Id.* at 391-392, emphasis added. "Public policy in California mandates the *equal* treatment of men and women." *Koire*, *supra*, 40 Cal. 3d at 37, original italics. "Statutes such as the Unruh Civil Rights Act are declaratory of California's public policy against racial discrimination, whether private or public action is involved." *Winchell v. English*, 62 Cal. App. 3d 125, 128 (1976). "Discrimination on basis of race or color is contrary to the public policy of the United States and of this state." *Burks v. Poppy Const. Co.*, 57 Cal. 2d 463, 471 (1962). "The

---

in many respects parallels the mandates of the Unruh Act – in accordance with the ordinary meaning of its words: To discriminate means "to make distinctions in treatment; show partiality (in favor of) or prejudice (against)…"  Giving preferential treatment "means giving 'preference,' which is 'a giving of priority or advantage to one person … over others.'"  *Id.* at 560-561.  "**However it is rationalized, a preference to any group constitutes inherent inequality. Moreover, preferences, for any purpose, are anathema to the very process of democracy.**" *Id. at* 562. "In approving Proposition 209, the voters intended section 31, like the Civil Rights Act as originally construed, 'to achieve equality of [public employment, education, and contracting] opportunities' (citations) and to remove 'barriers [that] operate invidiously to discriminate on the basis of racial or other impermissible classification.' The California electorate 'desired to restore the force of constitutional law to the principle articulated by President Carter on Law Day 1979: "Basing present discrimination on past discrimination is obviously not right."'" ((May 15, 1979) 47 U.S.L. Week 2726.) *Id*. The California electorate specifically rejected public policies that favor diversity over equality.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

need to promote the 'social policy'[11] asserted by [the defendant] is not sufficiently compelling to warrant an exception to the Unruh Act's prohibition on sex discrimination by business establishments." *Koire* at 33.  The Unruh Act "protects individuals from unequal treatment based on generalizations about 'a group' to which they belong." *Candelore*, *supra*, at 1151, citing *Marina Point*, *supra*, at 742-743.  "[A]n abstract desire to remedy some general social problem is not a compelling interest." *Crest*, *supra*, citing *Connerly* at 36; *Shaw v. Hunt*, 517 U.S. 899, 909-910 (1996); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 505-506 (1989).

Thus, contrary to Amazon's citation of laws purportedly supporting diversity (almost exclusively in contexts unrelated to this "business establishment" case, such as government contracting), Plaintiff is unaware of a single published opinion holding that California has a strong public policy in favor of businesses discriminating against people based on race, sex, or sexual orientation under the guise of diversity, especially not to the extent that such a policy would outweigh, override, or otherwise trump the state's compelling interest in "eradicating discrimination in all forms." *Pines* at 391.

Here, Amazon went too far by offering valuable programs, advantages, privileges, and/or services to certain groups and not to others based on race, sex, and LGBT status, especially without having first demonstrated that it was unable to meet its diversity goals without resorting to discrimination, and that it was remedying past discrimination by Amazon against its sellers.  But Amazon undertook no such effort to narrowly tailor its programs in the least discriminatory ways possible.  Therefore, its

---

[11] The public policy exception offered by one of the defendants in *Koire* was that women earned 59 cents for every dollar men earn, i.e., the defendant offered discounts to women to address the gender wage gap.  Although people may disagree as to whether such a wage gap exists or the extent to which it exists, virtually everyone agrees that public policy supports the notion that such a gap should be closed if it does exist, and numerous laws at every level of government reflect statements of policy supporting equal pay regardless of gender.  But that was still "not sufficiently compelling to warrant an exception to the Unruh Act's prohibition on sex discrimination…" *Koire* at 33.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

argument in favor of a public policy exception to the Unruh Act and Civil Code section 51.5 must fail[12].

Below is a small sample of a much larger compilation of federal, state, and local statutes evidencing a strong public policy in favor of treating everyone equally:

- U.S. Constitution Fourteenth Amendment: No State shall deny to any person within its jurisdiction the equal protection of the laws.
- California Constitution Art. 1, § 8:  A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.
- California Constitution Art. 1, § 31(a): The State shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin.
- California Civil Code § 51: Business establishments shall treat everyone equally no matter their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status.
- California Civil Code § 51.5: No business establishment shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person on account of any characteristic listed in Section 51.
- Cal. Code Regs. Tit. 2, § 11006: The public policy of the State of California is to protect and safeguard the civil rights of all individuals to obtain employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age for individuals over forty, military and veteran status, and sexual orientation.

---

[12] As noted above in *Pines v. Tomson*, the Unruh Act extends equal protection analysis to the marketplace, and because race and sex are suspect classifications (*Koire* at 38), strict scrutiny applies. Thus, businesses seeking to classify people based on these personal characteristics – assuming the business can meet the high burden of showing a compelling interest in the first instance, which Amazon cannot – must demonstrate the remedy chosen is narrowly tailored to suit that interest, and that race- and/or gender-neutral alternatives were attempted, but failed, and the least restrictive means necessary were utilized.  *Connerly* at 37.

22

- Cal. Code Regs. Tit. 5, § 4900: No person in the State shall be subjected to discrimination, or any other form of illegal bias. No person shall be denied the benefits of any local agency or educational institution's program because of sex, sexual orientation, gender, ethnic group identification, race, ancestry, national origin, religion, color, or mental or physical disability.
- Cal. Bus. & Prof. Code § 125.6: Every person who holds a State of California license shall not refuse to perform that licensed activity because of any personal characteristic listed in Civil Code section 51.
- Cal. Educ. Code § 220: No person shall be discriminated against based on race, disability, gender, gender identity, gender expression, nationality, ethnicity, religion, sexual orientation, or immigration status in State educational program.
- Cal. Gov't Code § 11135: (a) No person shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be denied equal access to any State program.
- Cal. Ins. Code § 10140: No insurer shall deny insurance based on a person's race, color, religion, sex, national origin, ancestry, or sexual orientation.
- Public Contract Code § 2010: A bidder for a contract with a state agency for $100,000 or more shall certify they comply with the Unruh Civil Rights Act.
- 42 USC § 1981 All persons shall have the same right in every State and Territory as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind.
- Cal. Public Resources Code § 30013: The Legislature declares that to advance environmental justice and equality, no person in the State, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability, shall be denied equal access to or be subjected to discrimination under any program receiving State financial assistance.
- 42 USC § 2000a: All persons are entitled to the equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination on the ground of race, color, religion, or national origin.
- 42 USC sec. 2000e-2(a). It is unlawful for an employer to discriminate against any individual based on race, color, religion, sex, or national origin.

23

- Et cetera, as partly listed in below footnote[13].

In essence, Amazon is asking this Court to choose between the compelling public policy embodied in the United States Constitution, the California Constitution, California statutes, federal statutes, and countless federal and state judicial opinions mandating full and equal treatment of all citizens regardless of their personal characteristics, and Amazon's incongruous argument that by providing certain services to certain identity groups or minorities, while denying these same services to other groups, including other minorities, somehow "fosters diversity." The law simply does not support a diversity exception to straightforward antidiscrimination statutes.

**4. There Is No Evidence In The Complaint, Or That Has Been Judicially Noticed, That Amazon's Race, Sex, And Sexual Orientation-Based Services "Foster" Diversity; On The Contrary, These Exclusive Services Actually Discourage And Hinder Diversity By Discriminating Against Many Of The Groups Amazon Ostensibly Favors.**

One thing is certain about Amazon's exclusionary race, sex, and sexual orientation-based programs or services: They do not foster or promote diversity. For example, as set forth in the Complaint, Amazon's exclusive services for Black-owned businesses, no matter their financial situation or business success, experience, or acumen, excludes approximately 88% of the U.S. population, including Hispanics, Asians, and Native Americans. (Complaint, ¶10.) Accordingly, in this age of diversity, equity, and inclusion, these exclusive services that Amazon touts as fostering diversity

---

[13] California Civil Code § 51.6, Cal. Code Regs. Tit. 2, § 11105, Cal. Gov't Code § 12920, Cal. Gov't Code § 12921, Cal. Gov't Code § 11139.8, Cal. Gov't Code § 12940, Cal. Gov't Code § 12955, Cal. Health & Safety Code § 33436(b)(1), Cal. Public Contract Code § 10295.35, Cal. Pub. Res. Code § 5080.34, 42 USC § 2000a-1, 42 USC § 2000d, 31 USC § 6711, 49 USC § 306, City of San Diego Art. 2: Administrative Code, Div. 35 § 22.3501.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

actually discourage and hinder diversity, and instead promote division, inequity, and exclusion.

## V.   CONCLUSION

For the above reasons Amazon's motion to dismiss should be denied. If granted in whole or in part, Plaintiff respectfully requests leave to amend his Complaint.

Should the Court grant Amazon's motion, the consequences, especially in today's massive e-commerce economy, would significantly weaken California's antidiscrimination laws and compelling public policy in favor of treating everyone equally.  Amazon and other online retail giants will be free to continue discriminating against and treating unequally businesses owned by people based on the disfavored business owners' race, sex, and sexual orientation. These and other e-commerce sites could legally favor businesses owned by wealthy Blacks over businesses owned by poor or middle-class Hispanics, Asians, or Whites, or promote, financially support, and mentor only businesses owned by wealthy Hispanics or fabulously rich members of the LGBT community, but not businesses owned by poor or middle-class Asians or heterosexuals.  Civil rights are for everyone, and antidiscrimination laws were enacted to prohibit and outlaw these types of discriminatory business practices.

This Court should follow the compelling public policy, evidenced by California and federal statutory and legislative enactments and well-established case law, in favor of businesses treating individuals and other businesses equally on the basis of race, sex, and sexual orientation.

Respectfully submitted,

Dated: April 6, 2022                    By: _____
                                            Greg Adler
                                            Greg Adler P.C.

25