1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11
12
13
14
15
16
17

| JONATHAN CORRELL, on behalf of himself and all others similarly situated, | Case No.:  3:21-cv-01833 BTM |
|---|---|
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS PLANTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) WITH LEAVE TO AMEND** |
| v. | |
| AMAZON.COM, INC., and DOES I-10, | |
| Defendant. | [ECF No. 13] |

18

19
20
21
22
23

Before the court is Defendant Amazon.com., Inc's ("Amazon") Motion to Dismiss under the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff Jonathan Correll ("Correll") opposes the motion.  For the reasons discussed below, the Court **GRANTS** Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) with leave to amend.

24
25

## I.  BACKGROUND

26
27
28

Correll, on behalf of himself and a potential class, filed suit against Amazon alleging unequal treatment and discrimination in Amazon's Seller Certification program, Guided Buying policy, and other orientation-based incentive programs

for retailers.  (ECF No. 1 ("Complaint").)  Plaintiffs' Complaint asks for injunctive relief and damages under California Civil Code §§ 51 and 51.5 ("Unruh Civil Rights Act").  (Id.)

The parties agree that Amazon currently has policies in place to promote, encourage, and incentivize minority certified sellers.  (ECF No. 1, 13-15.) Amazon asserts it created these initiatives "to increase the diversity of its seller population so that customers have the greatest possible choice."  (ECF No. 13, 12.)  The specific incentive programs challenged by the complaint include: 1) Amazon's "Seller Certification" program, which allows sellers to list certifications on their site based on their businesses ownership, including women, veteran, LGBT or minority-owned business certificates; 2) Amazon's "Guided Buyer policy," which allows Amazon Business customers to "prioritize products sold by sellers with particular certifications"; 3) Amazon's spotlight pages, which highlight selected business and their products on curated 'themed' sites, including "Discover Women-Owned Businesses", "Buy Black" for Black History Month, "Shop Hispanic & Latino Goods" for Hispanic Heritage Month; and 4) the "Black Business Accelerator Program" which offers limited free advertising, image services, credit assistance, and eligibility for potential cash grants to select certified sellers. (ECF No. 13, 4-5; ECF No. 1, 3.)  The complaint alleges that through these programs Amazon "direct[s] consumers away from Amazon's disfavored sellers…and towards Amazon's preferred and privileged sellers" based on the sellers' identity.  (ECF No. 1, 2-3.) Plaintiff pleads that he visited Amazon's website in the summer and fall of 2021 with the intent to use Amazon's sales services.  (ECF No. 1 at 17.)  There, Plaintiff encountered Amazon's programs which Plaintiff asserts "denied and deprived heterosexual White males" among other groups "the full and equal accommodations, advantages, facilities, privileges, or services based on their sexual orientation, race, and sex."  (Id. at 17.)  After viewing these programs, Plaintiff did not open an Amazon Sellers account and did not sell any product

through the website.  (Id.)  Plaintiff's Complaint does not plead facts sufficient to identify Plaintiff's products, seller history, or that he was "able and ready" to sell products on Amazon's website prior to viewing the incentive programs.  (Id.)

## II.  DISCUSSION

Amazon moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing and 12(b)(6) for failure to state a claim.  (ECF No. 13. ("Def.'s MTD").) The court addresses both motions in turn.

## A.  Motion to Dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

### I.    Legal Standard

Amazon challenges the Complaint, in part, on the ground that Plaintiff lacks Article III standing.  (Id.)  Standing is an element of subject matter jurisdiction. Therefore, Amazon moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations.  *Id.*  But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the Court must defer to the plaintiff's factual allegations and must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted).  "At the pleading stage, general factual allegations of injury

3:21-cv-01833 BTM

resulting from the defendant's conduct may suffice."  *Id.* at 560.  In short, a 12(b)(1) motion to dismiss for lack of standing can only succeed if the plaintiff has failed to make "general factual allegations of injury resulting from the defendant's conduct."  *Id.*

## II.   Article III Standing

Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Article III of the U.S. Constitution authorizes federal courts to exercise jurisdiction over "Cases" and "Controversies."  U.S. Const. art. III, § 2.  A litigant must have standing in order for their suit to meet the case-or-controversy requirement for federal jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "Standing is a necessary element of federal-court jurisdiction" and accordingly a "threshold question in every federal case."  *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (Citing *Warth*, 422 U.S. at 498.).  "The party invoking federal jurisdiction, not the district court, bears the burden of establishing Article III standing."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  As discussed below, a complaint can not proceed in federal court without Article III standing, even if a similarly situated complaint could proceed in state court.

Standing requires that the plaintiff (1) suffered an injury in fact; (2) show the defendant's causal connection to the injury; and (3) demonstrate that the injury would be redressed by a favorable decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  That is, a plaintiff must allege "'such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth*, 422 U.S. at 498-99.  A plaintiff must have suffered an 'injury in fact'— "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at

560).  A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way."  *Id.*  The Article III requirement that an injury is "actual or imminent" "ensure[s] that the alleged injury is not too speculative for Article III purposes---that the injury is certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiff contends that because he viewed identity-based incentive programs on the Amazon Seller site that he could not qualify for, he was subject to discrimination, and accordingly suffered an injury in fact.  (ECF No. 1 at 17.) However, while Plaintiff contends he visited the Amazon seller site, he pleads no facts to show he was 'able and ready' to sell.  (Id.)  Accordingly, Plaintiff does not plead a particularized injury sufficient to support an inference of injury-in-fact.

Generalized grievances have long been considered insufficient to confer standing under Article III.  *Carroll*, 342 F. 3d at 940 (stating "The Supreme Court has repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient to confer standing" (citing United States v. Hays, 515 U.S. 737, 743 (1995))).  In *Allen v. Wright*, 468 U.S. 737, 755 (1984), plaintiffs challenged the Internal Revenue Service for its failure to deny tax-exempt status to racially discriminatory private schools.  The Supreme Court held the parties lacked standing, stating the "asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Id.*; *see also Valley Forge College v. Americans United*, 454 U.S. 464, 482-83 (1982) ("[t]his Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." (internal quotation marks and citation omitted))"

In *Carroll v. Nakatani*, 342 F.3d at 947, the Ninth Circuit held that a plaintiff raising an equal protection challenge of the Hawaii Constitution lacked Article III standing because "the existence of [a] classification…is not sufficient to recognize

standing." There, plaintiff's claim challenged a provision that created agencies providing specialized benefits to Native Hawaiians, but the plaintiff's claim failed because he did not "provide any evidence of an injury from the...programs other than the classification itself. He offers no evidence that he is 'able and ready' to compete for, or receive" the challenged benefit. *Id.* This differs from *White v. Square*, 891 F.3d 1174, 1175-77 (9th Cir. 2018), where an 'able and ready' plaintiff "sought to use Square's services, but was unable to do so because of its discriminatory policy against bankruptcy attorneys".

Here, while Correll identifies his interest in selling with Amazon and offers the two dates he visited the site to set up an account, he does not allege that he was able and ready to sell a product, or that he even had a product to offer.  (ECF No. 1.)  As the party invoking federal jurisdiction, Plaintiff bears the burden of clearly alleging facts which demonstrate injury, that is, but for the discrimination, he had a product ready to sell.  *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983).  Correll has not met his burden.

Finally, Correll argues standing exists under a recent California Supreme Court Case, *White v. Square Inc*, which found standing to bring a California state law claim for discrimination under the Unruh Act.  891 F.3d at 1175-77.  Correll contends this case establishes standing for discrimination claims against websites, like Amazon, and that it must be followed here.  (ECF No. 14 at 8-10.)  As state and federal courts have long had different standing requirements, this argument is unpersuasive.  *Weatherford v. City of San Rafael*, 2 Cal. 5th 1241, 1247-48 (2017) (holding "[u]nlike the federal Constitution, our state Constitution has no case or controversy requirement imposing an independent jurisdictional limitation on our standing doctrine.").  The Supreme Court, in *Spokeo v. Robins*, 578 U.S. at 341, underscored the distinction between federal and state court standing requirements.  Spokeo noted that an allegation of a "procedural" statutory violation, "divorced from any concrete harm," cannot alone satisfy the

injury-in-fact requirement of Article III.  *See Opiotennione v. Facebook, Inc.*, No. 19-CV-07185-JSC, 2020 WL 5877667 (N.D. Cal. Oct. 2, 2020) (holding "[p]laintiff's allegations fail to support a plausible inference that she suffered an injury-in-fact as a result of Facebook's advertising tools" and that while "the Unruh Act 'renders 'arbitrary sex discrimination by businesses … per se injurious,' it still requires allegations of injury." (citing *Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007) and *Koire v. Metro Car Wash*, 40 Cal. 3d 24 (1985)).

Since Plaintiff failed to allege that he had an actual product to offer for immediate sale on Amazon, he has failed to plead injury-in-fact sufficient to confer Article III standing.

## B. Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

### I.     Legal Standard

Next, the court addresses Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).   "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Only a complaint that states a plausible claim for relief will survive a motion to dismiss.  *Id.*

3:21-cv-01833 BTM

**II.    Sufficiency of Claims under California Civil Code Sections 51 and 51.5 ("Unruh Civil Rights Act")**

Amazon's Fed. R. Civ. P. 12(b)(6) motion to dismiss argues that Plaintiff failed to state a claim under California's Unruh Civil Rights Act as required by Fed. R. Civ. P 12(b)(6).  (ECF No. 13.)  The Unruh Civil Rights Act provides in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their ... race ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).  Section 51.5 provides that "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51[.]"  Cal. Civ. Code § 51.5(a).  The analysis for Section 51.5 is the same as the analysis for purposes of the Act. *See Semler v. General Electric Capital Corp.,* 196 Cal.App.4th 1380, 1404 (2011); *see also Strother v. Southern California Permanente Medical Group,* 79 F.3d 859 (9th Cir. 1996) (interpreting § 51.5 as a mere extension of the Unruh Act, with the same showings and requirements).

To state a claim for discrimination under the Unruh Act, a plaintiff must allege that: 1) he or she was denied full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; 2) that his or her protected characteristic was a motivating factor for this denial; 3) that defendant's denial was the result of its intentional discrimination against plaintiff; and 4) that the defendant's wrongful conduct caused him to suffer injury. *See* Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 (Unruh Civil Rights Act—Essential Factual Elements) (2021); *see also* Cal. Civ. Code § 51(b).  "In general, a person

suffers discrimination under the Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." *White v. Square*, 891 F.3d 1174, 1175-77 (9th Cir. 2018).

Here, Amazon asserts that Correll's complaint fails on the merits because Amazon's initiatives are facially valid and reasonably related to state and federal diversity policies, falling under the Unruh Act exception.  California courts have consistently held that the Act has an "objective of prohibiting 'unreasonable, arbitrary or invidious discrimination'".  Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 (Unruh Civil Rights Act—Essential Factual Elements) (2021); *Javorsky v. Western Athletic Clubs, Inc.,* 242 Cal.App.4th 1386, 1399 (2015). "Although the Unruh Act proscribes 'any form of arbitrary discrimination,' certain types of discrimination have been denominated 'reasonable" and, therefore, not arbitrary."  *Hankins v. El Torito Restaurants, Inc.*, 63 Cal.App.4th 510, 520 (1998) (internal citations omitted.)  For example, "it is permissible to exclude children from bars or adult bookstores because it is illegal to serve alcoholic beverages or to distribute 'harmful matter' to minors."  *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 31 (1985).  "Discrimination may be reasonable, and not arbitrary, in light of the nature of the enterprise … and public policy supporting the disparate treatment." *Javorsky*, 242 Cal.App.4th at 1395.  To fall under the exception of the Unruh Act, a "compelling societal interest" may be relied on to justify differential treatment. *See Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 743 (1982).

Correll asserts that "Amazon's purported desire to foster diversity…does not rise to the level of an 'exceedingly persuasive justification' required by the Act.  (ECF No. 14).  Correll argues that "California courts uniformly reject unequal treatment based on race or gender as violative of public policy[.]"  (Id.)  Yet Amazon points to nearly 30 existing California and federal statutes which promote similar diversity goals and initiatives.  (ECF No. 13).  As the California

3:21-cv-01833 BTM

Supreme Court has explained, "'[p]ublic policy,' for the purposes of 'reasonable' discrimination under the Unruh Act, may be gleaned by reviewing other statutory enactments." *Koire*, 40 Cal. 3d at 31.  Moreover, this interest need not be "extraordinarily high or laudable," but "merely one that is sufficient given the nature of the particular disparate treatment at issue and other attendant circumstances," that is to say, "of sufficient societal benefit to render the disparate treatment reasonable and not arbitrary."  *Javorsky,* 242 Cal.App.4th at p. 1397; *Pizarro v. Lamb's Players Theatre,* 135 Cal.App.4th 1171,1174, 1176-1177 (2006).  At its core, the "fundamental purpose of the Unruh Civil Rights Act is the elimination of antisocial discriminatory practices—not the elimination of socially beneficial ones."  *Javorsky,* 242 Cal.App.4th at 1394-1395.

Amazon asserts it created these initiatives "to increase the diversity of its seller population so that customers have the greatest possible choice."  (ECF No. 13, 12).  The existence of similar state and federal statutes promoting diversity in small business ownership supports Amazon's contention.  (Id*.)*  This is distinguishable from Plaintiff's lead case*, Candelore v. Tinder, Inc.*, 228 Cal. Rptr. 3d 336 (2018), where the court found no strong public policy justification for charging users over 30 more to be on a dating application.  There, defendants were unable to "identify any legislative pronouncements that would justify such a departure from the Act's language" and could not demonstrate socially beneficial goals outside of increasing their own profits.  *Id*. at 348.  Here, this is not the case.  Amazon's policies do not exclude other sellers from joining the website, as was seen in *White*, nor do they lack public policy justifications as was seen in *Candelore*.  The initiatives echo existing statutes that promote diversity and serve public policy goals.  However, the circumstances concerning how the programs function are relevant to the exception.  For this reason, judgement on this record would be inappropriate.  Furthermore, the court should not decide this issue when standing is questionable.  If Plaintiff amends his complaint to establish

Article III standing, the Court will determine this issue on a motion for summary judgement.  Accordingly, the Court **DENIES** Defendants Fed. R. Civ. P. 12(b)(6) motion to dismiss without prejudice.

## C.  <u>Leave to Amend</u>

Plaintiff requested leave to amend if Defendants Motion to Dismiss was granted.  (ECF No. 15 at. 25.)  Under Federal Rule of Civil Procedure 15(a)(2), district courts "should freely give leave [to amend] when justice so requires."  A district court should deny leave to amend in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.*" Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).  The Court finds no reason that granting leave to amend would prejudice Defendant.  Accordingly, this Court **GRANTS** Plaintiff leave to amend.

## III.  <u>CONCLUSION</u>

For the reasons discussed above, Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) is **GRANTED.**  Defendant's motion under Fed. R. Civ. P. 12(b)(6) is **DENIED** without prejudice.  **Plaintiff's amended complaint, if any, must be filed on or before October 31, 2022.**

**IT IS SO ORDERED.**

Dated:  October 6, 2022

Honorable Barry Ted Moskowitz
United States District Judge

3:21-cv-01833 BTM